May it please the Court, Stephen Storch on behalf of the Appellant Oorah. I have reserved for three minutes in rebuttal. Your Honor, the issue, the District Court Three or two? We have two on our note here. Of course, it's up to the— Two minutes is fine. Either way, it's up to the presider. Go ahead. The District Court dismissed the Judiciary Act 487 claim on the sole grounds that the claim asserted in the District Court should have been brought in the original proceeding in which the alleged attorney misconduct took place. We respectfully submit that the District Court misapplied the rules pertaining to the Judiciary Act 487, specifically under the Melcher case, which we cited in our brief. New York has specifically held that a 487 claim need not be brought in the action in which the attorney misconduct took place. In fact, in the Melcher case, it was a situation where the attorney misconduct was alleged in the nature of submitting falsified documents. The opposing side in that case made motions to strike the documents. It made an application to disqualify counsel on the grounds that the counsel had submitted falsified documents and notwithstanding that, New York held in Melcher that the action could be brought in a subsequent proceeding. That is analogous to the situation in this case. Here, our complaint alleges a series of wrongful acts. Under the statute, you need only allege one wrongful act. There's no requirement of any sort of a pattern. But here, the complaint alleges over a nearly three-year period a series of wrongful acts by the attorneys. One, misrepresenting the presence of the defendant in New York. As we allege in the complaint, there was a statement made, representation to the court, that the defendant had no presence in New York, despite the fact that the General Counsel had an office in New York, the company was licensed to do business in New York, the attorney making the representation was receiving documents from the General Counsel in New York, and the interface was the General Counsel who had the office in New York. As a result of that, there was extended motion practice on whether or not to transvenue. Ultimately, URA was successful in that, just as in the Melcher case, where ultimately they were successful in terms of the underlying claim. Second set of wrongful acts, over a three-year period, there were repeated misrepresentations about the status of discovery. First, there was a representation that they were searching for documents. Then, there was a representation that we've made the production, this is all we've had. Then, there was a transaction between the attorney's two clients of a sale of assets and a subsequent representation that they were still searching for documents. Then, there was a representation that the electronic documents were on a server, but that the server had been rendered inoperative. Then, there was a final representation almost three years later that the server had been wiped clean. Those were multiple misrepresentations by counsel. The search could not have been undertaken as represented in court, given the fact that for almost three years, a server apparently was never looked at. Instead, it was transferred one of the lawyer's clients to another of the lawyer's clients, who then proceeded to wipe it clean. In addition, there were invoices that were submitted on a motion for summary judgment by the defendant on a counterclaim in that case. They were submitted by counsel. Those invoices were supposedly supported by underlying electronic documentation, which was destroyed. The invoices were accompanied by an affidavit from the general counsel, who I just mentioned, who in his deposition testimony testified that he actually didn't know how the billing the specific numbers were calculated. As a result of those misrepresentations, the court in New York entered summary judgment in over approximately $2.7 million against URA in this case. URA was forced to post a bond, appeal to the appellate division, which ultimately reversed the entry of summary judgment. So URA again was the prevailing party. However, it had to spend hundreds of thousands of dollars in legal fees in contesting a claim that was based upon, as we allege in the complaint, of phony invoices and supposedly supported by information that was destroyed during the course of the litigation. In addition, counsel stood in front of the court in the State Court and represented that there was no need to worry about a proposed sale transaction where his client was selling We now know that that was false. Recently, and this is not in the record, but in judgment enforcement proceedings in the State Court action, we've learned from the executive of the company that the money, actually $2 million of that $2.3 million, never even made it to the company, that it went into a different company for the specific purpose of avoiding creditors such as URA. And when asked, why would your counsel have made the representation that there were $2.3 million, he said, I have no idea. So in our complaint, what we seek here are the fees for having to defend against claims that had no basis and that were based on information that was not authentic, for having to press for information to try to defend against the case and also prove the case in the face of repeated misrepresentations about the status of discovery. And also for the delay to hold off our client from finding out information so that it could determine whether or not there were creditor's rights that it could assert or take certain steps to protect its interest as a creditor. All of those things that I've just told were either issues that we prevailed on ultimately, that URA ultimately prevailed on, or that no decision was ever come to. So the cases that the district court relied upon below, each of those cases were situations where the party who was bringing the 487 claim had lost in the previous court. It had lost, and the courts in each of those cases, and I think the rationale is very consistent, it found that you can't backdoor and try to challenge a decision of another court by coming in now and making a claim that the attorney somehow did something that led that other court to so decide. In this case, we do not challenge any decision of the state court. We are not asking the district court to overturn anything. We are just asking for the damages that we suffered as a result of ultimately having to prevail, ultimately prevailing on the issues that I outlined. Thank you. Thank you, Mr. Storch. Ms. Agassi, go ahead. Good afternoon, your honors. May it please the court. I'm Rachel Agassi on behalf of the Appellees. In this action, ORA attempts to re-litigate issues which were litigated ad nauseum in the state court. What about it are they seeking to re-litigate? It doesn't sound to me like they're re-litigating anything. Right, so every single one, and I'm going to go through every issue that Mr. Storch brought up. Every single one of those issues was litigated. So for example, in terms of the invoices. Throughout the underlying state action, ORA has repeatedly claimed that the invoices were false. There was no such finding that the invoices were false. In fact, the invoices created by Covista, which were created before Cain Kessler was retained, were based on computer generated data on an agreement between ORA and Covista from 2001. ORA and Covista eventually entered into another agreement from 2004 based on an additional services that ORA was providing Covista. The second agreement didn't entirely supersede the 2001 agreement. And because of that, there was an issue of law as to whether a certain provision in the 2001 agreement was operative. It was that provision that the invoices were created under. And it was so confusing as to which of these two agreements was operative, that ORA initially initiated the state action under the 2001 agreement, later amending their complaint to add claims under the 2004 agreement. When both parties filed for summary judgment in the state action, ORA filing summary judgment on their main claims and Covista filing summary judgment on the counter claims. The state court found that the provision in the 2001 agreement prevailed and issued summary judgment on behalf of the counter claims, on behalf of Covista. Eventually, the first department overturned that, found the 2004 agreement to be operative. Neither of those decisions turned on a material representation as to the authentic nature of the invoices, it all turned on whether one provision in one agreement superseded another. Not whether the authenticity of these invoices was at issue. So that was entirely litigated in the underlying action. For the exact same reasons, when King Castle was first retained on behalf of Covista and they filed a motion to dismiss based on form non-convenience and also based on business corporation law 1314, which precludes two foreign corporations from proceeding litigation in New York. Under that statute, there's an exception if one of those corporations maintains a place of business in New York. There was a legitimate dispute, first in the form non-convenience, which whether Covista maintained a place of business in New York or not was not relevant to that. There was no dispute that the principal place of business was in Tennessee. All their servers were in Tennessee. For the most part, all their witnesses were in Tennessee. URA similarly was also a foreign corporation, so that was a legitimate motion. Admittedly, King Kessler lost, but they didn't make any misrepresentations with respect to that motion. And certainly, URA doesn't claim that they did. And in terms of whether the general counsel maintained an office in New York. There wasn't a business presence here in New York state, right? Right, so actually King Kessler didn't make any representations as to that. They said that the main place of business was in Tennessee. They actually learned later during the deposition of Covista's general counsel, who is actually based out of New Jersey, not out of New York, there's no dispute there. That he occasionally uses an office in New York when he works in New York. After he testified to that at his deposition, five days later there was a conference in the state court. And King Kessler informed the court of that testimony as soon as they learned it. Which was also before the motion practice was decided. And when the eventual decision came out on those two issues, in the motion that says foreign non-convenience and the BCL law 1314. The judge denied both, but only used the presence of Mr. Kuzan in New York, his occasional use of an office suite in New York, as a reason to deny the BCL motion to dismiss. So, ORA's main claim with respect to this was there was some kind of undue delay. Obviously, King Kessler has no control that the state court took over a year to put a final decision in the case. And even if there had not been a BCL claim for dismissal, that foreign non-convenience claim for dismissal was still appropriate, even though it lost eventually. And then in terms of the servers, King Kessler didn't represent, there's no dispute that King Kessler did not represent either Covista or Birch, which acquired the assets of Covista in the asset sale. When King Kessler made representations to the court that its client was searching its files, that certainly was its belief at the time, and there's nothing pleaded in the complaint that they had any intent to deceive the court or had any knowledge that that wasn't true. And actually, it in fact was true, because Covista did produce hundreds of pages of material, just not the information from the servers, which they eventually learned was wiped by Birch as soon as King Kessler learned that they informed the court. I believe that was December 2014. Also, I just want to point out how illusory the claim of delay is, because ORA learned, I'm sorry, strike that Covista admitted that it was liable for, it admitted basically liability in the claims against it from ORA in, I believe it was 2015, and then ORA took absolutely no action to pursue judgment on those claims for a year and nine months, instead pursuing judgment- I'm sorry, and then ORA took absolutely no action to pursue judgment on those claims for a year and nine months, instead pursuing judgment on those claims. So, certainly, and each step of the way, ORA asserted sanctions against Covista and its attorneys. So, certainly, and each step of the way, ORA asserted sanctions against Covista and its attorneys. It claimed delay. These are all arguments that were made in the underlying case. It certainly, and so eventually, Birch, which acquired Covista's assets, ORA made a motion to amend the complaint to add Birch and also move for sanctions, because at that point it had learned that the service had been wiped and sought to preclude- So, Ms. Agassi, how do you read the district court's decision that obviously gave judgment to your client? I'm sorry, Mr. How do you read the district court's decision? What was the rationale on which the district court dismissed the claim here? Dismissed the claim against Birch? Well, so that's not quite a- What are you arguing about? Oh, when the court actually did not grant monetary sanctions, but did grant an adverse inference with respect to those wiped servers, the court found that that to be the appropriate sanction because there had been significant material already produced to ORA and also because ORA had its own material to substantiate its claim, so it didn't find that there was any misrepresentation warranting sanctions with respect to the servers. Judge Engelmeyer's decision. How do you read what Judge Engelmeyer- the basis for Judge Engelmeyer- Oh, correct. So Judge- Dismissing this claim. Right. So Judge Engelmeyer did find that this action was improper because you cannot assert a separate plenary action when there is an ongoing state action, as there is here. The Melcher case is completely an opposite. As opposed to the Melcher case, this action is currently ongoing. In the Melcher case, when they settled that underlying case, they specifically carved out the judiciary law 487 claims. There was no such carve out here. In fact, in the Melcher case, they never addressed the claims that substantiated the 487 claims. And on top of that, there was a concern in the Melcher case that had they brought the 487 claims in the underlying action before it was closed, that there would be a motion to disqualify the attorneys. There's no such concern here. Kane Kessler has been withdrawn from the underlying case since May 2017, five months before this action was brought. Judge Engelmeyer seems to have thought that URA is collaterally attacking the underlying judgment. Is that right? Correct, Your Honor. How do you define a collateral attack? So essentially, they're trying to relitigate every single issue that they brought forth in the underlying action. But URA was the prevailing party, right? URA was the prevailing party for only one of these issues. And that issue was whether the 2001 or the 2004 agreement prevailed. And it was not prevailing. Is this dispute over? Sorry, just to follow up. No, it's currently ongoing. There's a liability judgment but no damage judgment. Isn't it true the only issue, though, on appeal that appellants are raising has to do with the 487 claim? Am I correct? That's correct. And I want to point out that nowhere in the complaint do they actually point to any specific material representation that Cain Kessler made. And there's ample case law cited in our papers, and I'd be happy to cite some specific case law here, finding that there can be no judiciary law 487 claim against an attorney for mere discovery disputes and failed motion practice. There has to be an actual misrepresentation or chronic pattern of misrepresentation that's material to the decisions in the underlying case. And certainly they can point to no affirmative representation that Cain Kessler made. It's merely an effort to try to go after what they see as the deep pockets, even though they've actually never pursued whether a judgment against Covista is even collectible. They don't even have a judgment against Covista in the underlying case, even now. Let me ask you, in New York, is there a way to reopen a case in state supreme court after the action is closed? You could do a motion to vacate. But, again, that might not even be an issue. It certainly isn't an issue here because the state action, as I said, is ongoing. It's not closed. It's not closed. And what's left, again, just so I'm clear? A judgment on the damages. There's been a judgment on liability, just not on damages. So there has not been evidence presented with respect to damages? Or the evidence has been presented, but it hasn't been toted up? I believe it hasn't been presented to the court. So you would interpret Judge Engelmeyer's opinion to be limited to situations where the proceedings in the state court are still ongoing, right? Certainly. Or whether they were known to the claimant at the time the actions took place. And here, in every instance, not only were they known to Ura, but Ura made the very same arguments that they're making here in the underlying case. For example, when King Kessler moved to withdraw, Ura argued that it was just a mere delay tactic. They argued that to the court. That's what they're arguing here as some kind of misrepresentation that King Kessler somehow wanted out of the case as a delay tactic for their clients, which almost doesn't even make sense. But the court denied that opposition at the time and let King Kessler withdraw. So every single instance that these were argued. Logical extension of what you're asserting here, and I'm not quibbling at this point, that if they wanted to bring this action here in the Southern District, right? Yes, correct. All right. In the Southern District of New York, then they should have kept their mouths shut in the state proceeding and just suffered all of the slings and arrows, and then they would have been able to do it. No, actually, the standard is that whether they had all the information necessary at the time that the underlying proceeding was. So it's two separate issues. We're arguing, we both argue that they can't bring the case in a separate plenary action, essentially forum shopping to come to this court here. And then separately, we also argue that all the claims are precluded by collateral estoppel. So whether they were fully adjudicated or not, under the argument that they can't bring a separate plenary action when the underlying case is ongoing, when King Kessler is no longer representing any party in the underlying case, when all of the alleged acts of deceit were known at the time they were made in the underlying action, that they can't bring a separate plenary action for Judicial Law 487. I also want to point out that the first department decision in Little Rest 12 happened months after the Melcher case and reiterated the first department's, and Melcher's also, by the way, first department, reiterated the first department's standard that you cannot bring a separate plenary action that is not greater in scope, that doesn't assert a greater fraudulent scheme than the issues at issue in the underlying action. Certainly here, there is no greater fraudulent scheme. The complaint is asserting essentially the exact same claims in the underlying action. And then when you- The underlying action was for this contract, right? Correct. It's a contract dispute. It has to do with thinking you're going to get into a contract dispute and as alleged, that the attorneys for the other side are going to mislead you, lie to you, misrepresent the way things are and cause you to spin your wheels and incur extra thousands of dollars or tens of thousands of dollars of expenses. How are those two-one doesn't necessarily flow from the other. Right. So if you look at the decision in little rest 12, it's not that the causes of action need to be identical. It's that the claims of relief, which is certainly the case here, need to be the same claims as the underlying case. Here, the word is very explicit that what they're looking for- The underlying case is for a breach of contract. Correct. Correct. The underlying- Actually, the underlying case- They're not the same claims. Right. So the underlying case is actually a breach of contract and it was also a breach of fiduciary duty. I believe that's dismissed now. But- The company's fiduciary duty had nothing to do with attorney's fiduciary duty, which we all have, right? Right. Exactly. That's exactly true. Thank you very much. Mr. Storch, we gave your adversary a few extra minutes, but you've reserved two minutes. Thank you. A couple of quick points. In terms of the attorney's representation about no office, the Appendix 471 and 472 contain the attorney's direct representations on that. In terms of the false- What were they? Appendix 471 and 472. In terms of the misrepresentations about assets, that's on Appendix 21 and 22. With respect to the contention that URA moved for sanctions against Kay and Kessler below, I know they said that in their brief and had citations. The citations don't support that. No sanctions were sought against the attorneys below. There's nothing in this record to suggest that they were. With respect to the little rest 12, that was another one of the cases where there was an unsuccessful party who lost, who then came in 487 and made allegations against the attorneys saying, you did false things and that's what caused me to lose. And what the court said is, there's a remedy for that. You go into court and you seek to vacate the judgment if you have grounds to vacate the state court judgment. Don't use 487 as a way to go around that and try it in a different forum. Where they talked about, well, if you have knowledge about it, then they contend if you have knowledge about it, you can't bring a subsequent action. What they were saying there was you have knowledge about it, and so you should have gone to the court and raised it and stopped the judgment from being entered. Not that if you had knowledge about it, you can't bring the 487 claim. And Melcher teaches just the opposite. In Melcher, as I said before, they clearly had knowledge of the alleged misconduct by the attorneys. They moved to disqualify the attorneys on that grounds. Mr. Sturge, what is it that you want from us? What's the remedy you seek from us? Our remedy that we seek is to reinstate the complaint, reverse the denial of the motion to dismiss so that we can proceed in federal court. At minimum, and I'm not saying this should be the remedy, but at minimum, the district court dismissed us with prejudice. So on the one hand, saying, hey, you need to bring this in another action. And by the way, I'm dismissing it with prejudice so that the defendants here could allege that you don't have a right to bring it. Where else would you bring this following Judge Engelmeyer's decision? Well, it's interesting because the judge who is presiding over this case in state court has retired. In the state court action right now, we are proceeding to enforce one judgment we got against the defendant for cost there. And that's where I made the representation about what we've been discovering in trying to enforce that judgment. Assuming for the argument that Judge Engelmeyer's decree was not with prejudice, it was without prejudice, how would that help you? What would you then do? Well, it read to what he concluded. We'd have to make an application in the pending state court action to be able to insert an additional party to assert additional claims. Is there any impediment to your doing that? Yes, I think it was. I'm drawing a blank on the case. I don't think it was. I think it was a Malfatano where the court said, look, we may deny a motion for you to amend and to add the attorneys and to add these additional causes of action for a variety of reasons. Not the least of which is judicial economy. The action may be too far along. Maybe there are issues of conflicts with the attorney. So there's no assurance that seven years now into this. Even if it were dismissed without prejudice, you wouldn't be happy in that circumstance, would you? No, because if the rest of the decision stood, I'd have to go to state court, make an application and say, hey, Judge, here I am, seven or eight years into this case. Please let me add a new party and let's redo a whole new discovery schedule. Would you bring a separate action in state court? I'm sorry? Would you bring a separate action in state court? Well, the way the district court decision is, it has to be brought in the same action. So I don't know under the rationale of the district court decision. I could start a subsequent action. It would be in state court. The same action is available to you, right? In the state court now? Yeah. That's what he's referring to, right? Well, that's if we made the motion for leave to bring it in that. If, say, for some reason now the state court judge says, no, I'm going to deny it, exercise my discretion, then we'd start a new action. We could start it in state court. But under Judge Engelmar's opinion, you have to bring it in the same action, not the same court, but in the same action. So we'd really be in the same situation. I can be sure. And what exactly would be wrong with that? Or why would that be impossible or difficult? Because Judge Engelmar said if you're going to bring these claims, you have to bring it in the same action in which the alleged conduct took place. And that action is over? That action right now is in proof of judgment enforcement and proof of damages. That's the only issue left before that court. Why is it impossible to ask for some sort of equitable relief of the sort that you're seeking, which is effectively to reopen or to amend or whatever? I don't think it's impossible, Your Honor. I think it's highly up in the air whether we get it. And I think that we have a right. McLean has a right to bring the action. There's diversity jurisdiction here. And I think we have a statute that nowhere has this requirement that the district court put on it. And the statute, one of the oldest apparently in the United States, because it dates back to 1787. And it just doesn't have that requirement in it. Thank you very much. Thank you. Reserved decision. We are adjourned. Court is adjourned.